May it please the court, counsel, Christopher Schatz appearing on behalf of Petitioner and Appellant Lynn Dang. Mr. Dang's matter comes before the court on a certified issue in effective assistance of counsel and what appears to be best characterized according to Rule 22-1, Subpart E, as a motion to expand the Certificate of Appealability issued by the District Court so as to encompass Mr. Dang's due process claim of error stemming from the trial court's failure to provide him with an interpreter. I would like to address the ineffective assistance of counsel claim first, most specifically to draw the court's attention to the lack of application by the state post-conviction court of the test articulated by the United States Supreme Court in Strickland v. Washington. I also want to comment on the District Court's denial of the Certificate of Appealability concerning the due process issue because I feel that in fact the District Court held Mr. Dang to a higher standard of proof than is required by Section 22-53, Subpart C. Looking at the decision of the state post-condition court, looking at the circumstances that were in place in the state trial court back in March of 1997, the question becomes what was happening with respect to Mr. Dang? What was his understanding at that point in time concerning the activities of his counsel? What was his understanding of the issues that confronted him? What was his language comprehension and proficiency level as demonstrated by the only evidence that we have that is time pertinent or appropriate? That would be the statements contained in the record of the state court trial proceedings. In post-conviction review, Mr. Dang argued that his state trial court counsel was ineffective due to her failure to have the guns that were ultimately admitted into evidence as exhibits in the case to support the state's primary contention, the core element of the charge that was brought against Mr. Dang, that being that he had used a deadly or dangerous weapon in an assault. His contention was that his trial attorney failed to have those guns tested for blood and or DNA transferred materials. But they didn't have all the guns to test, did they? Your Honor, I view that contention as somewhat of a red herring from the standpoint that although there was references to three different guns, the reference actually comes from Mr. Dang himself referring to a firearm that was sold by him several weeks prior to the incident in question. So both the existence of this other item, I think it was referred to as a Beretta, and its history are both traced to the testimony of Mr. Dang himself rather than from any other independent source. So dealing with what the trial attorney had in front of her and what she confronted at the time that she came into the case, some five weeks in advance, I think it was, of the trial date, she had before her two items of physical evidence. She had before her a description, I would assume contained in the police reports, as later described in the testimony concerning a use of some weapon to strike the victim Vu. She had a description concerning a copious flow of blood as a result of that occurrence having taken place because the injury was purportedly to the nasal or nose area of the face of Vu. So she had blood, she had items that were physical exhibits that were going to be utilized ultimately in the trial proceedings as they were utilized for the purpose of arguing that these are the items that are in play with respect to supporting the testimony of Vu and the other acquaintance Vu as against Mr. Dang that he had solely used his fist. What if the attorney had insisted on the guns being examined for this and it turned out there were blood on the guns? If in fact that had taken place, that would be a bad fact. No question about it. The attorney would have been under no obligation to disclose that fact to the state. The state certainly had the firearms. They could have had them tested as well. What's important, I think, in that case... Why do you think there would be no obligation to disclose it? If the state had the guns, you'd say, all right, I want to have the gun tested. You think the state wouldn't insist upon the fact that if they're tested, we want the results? The state could insist on it. Whether or not they would be accessible to the state would be a question, I think, that a court would have to decide. The state would have to move. Presumably they'd be motivated at that point to pay more attention to it. Yes, exactly. So they'd get the results from their own testing. Exactly, Your Honor. And a question should arise as to why weren't they tested by the state initially. But they weren't tested. The state trial attorney had the opportunity clearly to initiate a test. And part of what has happened here, and I invite the court to look at the post-conviction court's decision concerning this case in terms of the question of ineffective assistive counsel. If you look at the court's decision in the post-conviction arena, and you can find this in the excerpts of record at 020 through 022, you see the post-conviction court focusing on an aspect of this case that had nothing whatsoever to do with the elements of Strickland. There's no discussion of Strickland or the prongs, the two prongs of Strickland, the reasonable conduct of the attorney and prejudice whatsoever. What in fact the argument is is that in some manner because Mr. Bain, in his lack of understanding for what was taking place in the trial court arena, was insisting on his right to proceed under state law to trial. Well, what he insisted from a lack of understanding. It seems to me he knew what he was doing. He just said, I've been here long enough. I don't want to stay here longer. I want to go to trial. He certainly does say that. Why is that a lack of understanding? Here's where the lack of understanding comes in, and this is in the supplemental excerpt of record at page five. He says, and it's important to note this, in addition to just kind of the broken up language, he says, I don't feel it needs that much time to go over a simple case like this for just self-defense. Now, this was not a self-defense case. The reason why it wasn't a self-defense case is because if the state meets its proof that a deadly or dangerous weapon was utilized, that voids his self-defense because the facts are that the assailant in a self-defense context, Boo, was unarmed, that he only approached and pushed Mr. Dang. So if Mr. Dang, in fact, escalates in the use of a deadly or dangerous weapon, there is no self-defense. So this discloses a fundamental misunderstanding on the part of Mr. Dang as to what was at stake in this particular case. I'm sure you've seen the state's 28-J letter. Yes, sir, I have. That Stewart case. Yes, sir, I have. It seems to be pretty close. It is indeed, Your Honor, and it supports my position, and I'll tell you how. In that case, if you read it, what took place between the district court in that case or the trial court, it actually was, I think, the state court in that case and the petitioner. Let me just quote. The judge then engaged in an, quote, extended call. What page are you quoting? I'm looking at page 401, Fed 3rd, 1060. Well, this is so new. It would actually be, oh, no, here it goes. Let me see. 1060. It's 1065, right at the bottom. The judge then engaged in a, quote, extended colloquy with Stewart in a quotation. The judge, quote, patiently explained that his lawyer might be able to generate some contradiction, and they went on for further discussion. There were, in fact, three separate colloquies in the Stewart case between the trial court judge and the petitioner, all of which involved that trial court patiently explaining, going over the case, talking about what, in fact, might be lost if Mr. Stewart, in that instance, wanted to go to trial. In Mr. Dang's case, we have a quick and hurried colloquy. The trial court judge saying, do you understand? Do you understand? And we have not one mention by Attorney Dickinson or the trial court of what Mr. Dang stood to lose. We have not one mention of it by the trial court attorney of her intent to conduct. It was clear in that case, though, that Stewart's opinion says misunderstood what was going on because there was a problem. Right. It was not continuing the case. It's unclear in the Stewart case exactly what Stewart's complaint was because it's unarticulated as to what, in fact, it was that his trial court counsel did not do. Basically, he claims that she was or that the trial court counsel was in some general sense, as I understand it, unprepared. That's much different from Mr. Dang's case where we have a specific complaint concerning a lack of pursuit of a specific. The case wasn't decided on the basis of it's not clear what the trial counsel wanted to do. The case was decided on the basis that the client clearly insisted on going to trial as the client did here. That's correct. But in the Stewart case, as distinct from the Dang case, we have a full and complete record that shows us we have an individual who's exercising knowing and voluntary decision process, something we don't have here. Insofar as my time is overrun, I would just simply note with respect to the motion on the certificate of appealability, that one of the problems that lies in the core of this case is whether or not the trial court judge should have made inquiry concerning Mr. Dang's understanding of the English language and appointed an interpreter to assist him. Thank you, Your Honor. May it please the Court, Kathleen Segal again for Respondent. This is another case where I feel like we're going far afield from what the real issue is in this case. There's not an issue of whether the trial attorney took appropriate steps to ensure that Petitioner understood what he was giving up by refusing to waive his 60-day speedy trial right. The claim in this case is trial counsel was constitutionally inadequate when she didn't do DNA testing on these two guns. So all of this about whether it was valid, whether he should have had an interpreter, whether he knew what he was giving up when he chose to go to trial, it's really all irrelevant. It's just smoke and mirrors. The question is, should she have had DNA testing done on these two guns, assuming that there was something there to be tested? Does there have to be DNA testing or just whether there was blood on the guns? The claim was for DNA testing, which would assume that there's blood there to start with something to test. But if there was blood there... It's not going to help him. Why not? Because, well... It's the absence of blood that he's... He's looking for the absence of blood because his story is, I never hit him with a gun. I only hit him with my fist. And he makes that very clear in his testimony at trial. So that the... Well, I guess my point is that if blood was there, that's going to affect the defendant. It's going to affect the defendant adversely. That's the way I would look at it, and I would imagine... And so this would maybe be a, what I'm concerned with, a strategy of not to have the guns tested for that reason. Not necessarily DNA, just for blood. Well, in fact, that's true, Your Honor. And I didn't put it in the red brief, but Petitioner brings up, well, the question should arise, why didn't the state test these guns? Well, in fact, the attorney made that argument in her closing. It's not in the excerpts of record, but in Volume 3, pages 243 and 244, that's exactly the argument she made was, well, gee, if they really think that he hit this victim in the face with a gun, the state should be testing to see if there's blood on them. And they didn't do that. So it's a time-tested, honored, strategic decision if you don't do testing. There was a huge risk if she had in fact... Assuming she had time, for starters, which I don't think she did. Assuming that she had done the testing, the state could have got those results if they were adverse. The state could have called their tester to testify as a witness. So there were lots of downsides to doing the testing, even if we assume she had time. So I think the district court's decision that she simply did not act unreasonably by not taking steps to have these guns tested for anything, for physical evidence, was not unreasonable. And so Petitioner's case simply fails on the first prong of the Strickland test. Unless there are questions, I think that's as simple as it is. How about the Stewart case? Stewart, I added Stewart because Stewart, for me, is not a case about how good is the colloquy. Stewart, for me, simply talks about that it's not a constitutional violation to have to choose one constitutional right over the other. And in fact, he wasn't forced to do that here at all. He simply chose to waive a statutory right and exercised his constitutional right to speedy trial. He was not forced to give up counsel. Considerable more statements by the judge and the colloquy with the judge than in this case. That's probably true. But in this case, I think they made perfectly clear to Petitioner the important piece, which was you understand that your attorney wants more time and could do a better job for you if she had more time. I don't think the court is required to go into every single possible thing that the attorney might do. Your lawyer has explained to you that she needs more time. You're not giving it to her. So I think that's adequate in this case. Thank you. Just very quickly, I think it's important to reflect that in this case, the trial counsel was faced with a situation where he had two witnesses that were going to take the witness stand and testify that Mr. Dang had a gun in his hand. Therefore, the only access to evidence to corroborate Mr. Dang was the forensic examination of those items to establish that there was no blot on those items and put on the type of criminalist that was shown to exist by the post-conviction court record. I think the state police criminalist that would testify that it would be predictable that with this type of injury, there would be a blood transfer. And the absence of it at least would be corroborative of Mr. Dang's contention that he used his fist in striking Mr. Kluge. Thank you. Thank both counsel for your arguments. The case just argued is submitted. The next case on today's calendar is Choi v. AEP Energy Services. Thank you.
judges: Hug, Tashima, Clifton